THOMPSON, Presiding Judge.
Kathryn Leann Shinnick ("the wife") appeals from a judgment entered by the Jackson Circuit Court ("the trial court") divorcing her from Brian Joseph Shinnick ("the husband"). The judgment, which incorporated the agreement the parties had reached after negotiations and announced in open court, divided the marital property, awarded the wife alimony in gross, and waived periodic alimony for both parties, among other things.
On appeal, the wife maintains that the trial court did not possess subject-matter jurisdiction but that, if this court determines that the trial court did possess subject-matter jurisdiction, the trial court erred in preventing her from presenting evidence regarding her mental state and the circumstances that existed at the time the parties' agreement was reached. The record indicates the following evidence and information relevant to the issues on appeal. The husband filed a divorce complaint in the trial court on May 1, 2017.[1] In the complaint, he alleged that he was a resident of Massachusetts but that the wife was a resident of Jackson County, Alabama, and had been for more than six months immediately before the complaint was filed. The husband also submitted a sworn "affidavit of residence" with the complaint, in which he stated that he had personal knowledge that the wife "has resided within the State of Alabama for more than six (6) months prior to the date the Complaint in this matter was filed."
On June 7, 2017, the husband filed an application for an entry of default. The next day, the husband filed a motion for a default judgment on the ground that the wife had failed to answer or otherwise submit a pleading in response to the divorce *1119 complaint. On June 14, 2017, the wife filed a motion to dismiss the divorce action pursuant to Rule 12(b), Ala. R. Civ. P. Specifically, the wife claimed that the trial court did not have subject-matter jurisdiction over the action or personal jurisdiction over her. In the motion, the wife stated that she was a legal resident of Massachusetts, that she and the husband resided together in Massachusetts, and that they had insufficient contacts with Alabama to confer jurisdiction on this state.
In support of her motion to dismiss, the wife submitted an affidavit stating that, as of June 19, 2017, she was "currently living in Nashville, Tennessee," but that she was a legal resident of Massachusetts. She acknowledged that she had owned a house in Jefferson County since 2006, and that she and the husband had jointly owned the house since 2008, but she stated that neither of them had lived there since they married in Georgia in 2009. At the time the wife executed the affidavit, she said, renters occupied the house.
The wife explained that the husband and she had lived in Massachusetts throughout the marriage "until our difficulties in May 2016." She testified that she took a vacation to California in June 2016, then, on June 29, 2016, she drove from the parties' house in Massachusetts to her parents' home in Vincent, located in Shelby County. In an e-mail message dated June 25, 2016, the wife told the husband that she had "decided to spend the summer in Alabama." The e-mail message indicated that her intent was to return to the marital residence in Massachusetts in August. However, "[b]y the time August [2016] arrived," the wife said, the husband "was so angry with me that he asked me not to return to our home and continued to ask me to not return to our home" as late as April 2017. During that time, the wife said, she traveled to Europe and then spent time in Nashville; Atlanta, Georgia; Knoxville, Tennessee; Florida; and Oxford, Mississippi, often visiting with family and friends.
Additionally, the wife explained, she continued to hold a Massachusetts driver's license and to pay taxes in Massachusetts; she was enrolled in graduate school in Massachusetts; she did not have a lease or utilities in her name in Alabama; and she did not pay taxes in Alabama. On the other hand, the record includes an e-mail message dated December 13, 2016, that included a Blue Cross and Blue Shield of Alabama statement for the wife; the wife's resume, which indicated an address in Pisgah, which is in Jackson County; a number of bank statements addressed to both parties at the Pisgah address; and a case-action summary connected to a traffic citation the wife received in Etowah County on February 1, 2017, showing the same Pisgah address for the wife. The wife explained that the citation, which was for driving without a driver's license, was dismissed after she explained to the judge presiding over that matter that she had a valid Massachusetts driver's license and that she had not lived in Alabama for three consecutive months.
On August 8, 2017, the trial court held a hearing on the wife's motion to dismiss for lack of subject-matter jurisdiction and personal jurisdiction. The day before that hearing, the wife filed a complaint for a divorce in Massachusetts. The wife was not present at the August 8, 2017, hearing in Alabama, although she was represented by an attorney at that hearing. The wife's attorney told the trial court that the wife did not dispute having lived both in and outside of Alabama since the parties' separation in May or June 2016, but that she had never made a permanent change of her residence. At the time of the hearing, the attorney said, the wife was living in the marital residence in Massachusetts. The *1120 wife challenged the trial court's jurisdiction on the ground that the wife had not been an Alabama resident for six months before the husband filed the divorce complaint on May 1, 2017. She further argued that she never intended to make Alabama her permanent residence. The State Judicial Information System indicates that on August 9, 2017, the trial court entered an order denying the wife's motion to dismiss and scheduled the trial for October 3, 2017.
On September 22, 2017, the wife filed a "restated motion to dismiss for lack of jurisdiction." On October 3, 2017, the date the trial was scheduled to begin, the wife asked to be heard on the issue of jurisdiction again. After hearing the arguments of the parties, the trial court again denied the wife's motion to dismiss. The trial court then gave the parties an opportunity to resolve the issues between them. Later that same day, the parties announced in open court that they had reached an agreement, which was then read into the record. The following colloquy was then held:
"THE COURT [To the wife's attorney]: So is your client agreeing that this Court has jurisdiction over the parties and the marital issues?
"MR. EUSTACE [The wife's attorney]: As much as she can agree to such legally, Judge, yes.
"THE COURT: Is she agreeing that she has lived in Jackson County, Alabama, prior to her recent move back to Massachusetts?
"MR. EUSTACE: She agrees that she did live here for some time prior to her move.
"THE COURT: Either she agrees that I have jurisdiction to enter this order, or she doesn't; now that's just the way it is.
"MR. EUSTACE: She does, Your Honor.
"THE COURT: Is that true?
"MRS. SHINNICK: Yes, ma'am."
The trial court then confirmed that what had been read into the record was what had been agreed to by both parties. On November 9, 2017, the trial court entered a judgment divorcing the parties and incorporating that agreement.
On December 11, 2017, the wife filed a motion to vacate the final judgment and to dismiss the case.[2] In her postjudgment motion, the wife again asserted that the trial court did not have subject-matter jurisdiction over this matter because, she said, she had not been an Alabama resident in the six months preceding the filing of the divorce complaint. She claimed that the husband had been forum shopping when he filed the action in Alabama and asserted that she could have received a significantly better outcome had the action been determined in Massachusetts. Additionally, the wife argued for the first time that she suffered from a mental illness and that that illness is what prohibited her from appearing at the August 8, 2017, hearing on her motion to dismiss. She contended that, on October 3, 2017, the day of the trial, she "was placed in a position of having to either settle the case under materially less favorable law than that of her domicile state of Massachusetts or to conduct a trial for which she was unable to prepare due to her mental condition and the principle of forum non conveniens."
On January 10, 2018, the trial court held a hearing on the wife's postjudgment motion.
*1121 That hearing will be discussed in more detail later in this opinion. On January 11, 2018, the trial court denied the wife's postjudgment motion. The wife then filed a timely appeal to this court.
On appeal, the wife once again argues that the trial court did not have subject-matter jurisdiction to consider this matter. The wife appears to argue that, because neither the husband nor the wife had lived in Alabama for six months before the husband's filing of the complaint on May 1, 2017, the trial court failed to obtain subject-matter jurisdiction in this case.
Pursuant to § 30-2-4, Ala. Code 1975,
"[c]omplaints for divorce may be filed in the circuit court of the county in which the defendant resides, or in the circuit court of the county in which the parties resided when the separation occurred, or if the defendant is a nonresident, then in the circuit court of the county in which the other party to the marriage resides."
The parties do not dispute that the husband is not an Alabama resident. However, whether the wife was an Alabama resident living in Jackson County at the time the complaint was filed was an issue of fact for the trial court to decide.
" 'Where evidence is presented ore tenus, this court will not disturb a lower court's judgment unless that judgment is palpably wrong, without supporting evidence, or manifestly unjust.' Seymour v. Seymour, 597 So.2d 1368, 1369 (Ala. Civ. App. 1992). The major factual issue in this case involves the residency of the parties.
" 'The determination of whether the parties resided in [a certain county] is a factual question resolved by the trial court after a hearing of the evidence by the court. Such a finding is given a presumption of correctness and will not be disturbed by this court unless we can say it was plainly and palpably wrong.'
" Ex parte Greene, 527 So.2d 1320, 1321 (Ala. Civ. App. 1988)."
Skieff v. Cole-Skieff, 884 So.2d 880, 883 (Ala. Civ. App. 2003).
Initially, the wife challenged the husband's contention that she was an Alabama resident at the time the complaint was filed, and the evidence regarding this issue was disputed.
" ' " Section 30-2-5, Ala. Code 1975, discusses the residency requirements for a plaintiff in a divorce action when the defendant is a nonresident of Alabama and states:
" ' " 'When the defendant is a nonresident, the other party to the marriage must have been a bona fide resident of this state for six months next before the filing of the complaint, which must be alleged in the complaint and proved.'
" ' "If the residency requirements are not met, then a trial court does not have jurisdiction over the marital res and any judgment entered is void. Seymour v. Seymour, 597 So.2d 1368 (Ala. Civ. App. 1992) ; Chavis v. Chavis, 394 So.2d 54 (Ala. Civ. App. 1981). For the purposes of § 30-2-5, residence is the same thing as domicile. Seymour v. Seymour, supra. 'Domicile is defined as residence at a particular place accompanied by an intention to stay there permanently, or for an indefinite length of time.' Nora v. Nora, 494 So.2d 16, 17 (Ala. 1986). A person's domicile continues until a new one is acquired. Id."
" ' Fuller v. Fuller, 991 So.2d 285, 290 (Ala. Civ. App. 2008). "[T]he burden is on the party who asserts a change of domicile to prove it." Richardson v. Richardson, 258 Ala. 423, 425, 63 So.2d 364, 366 (1953).'
" Ex parte Ferguson, 15 So.3d 520, 521-22 (Ala. Civ. App. 2008). Furthermore, *1122 we note that '[w]hen the trial court hears oral testimony regarding residence under § 30-2-5, "the judgment of the court is presumed correct and will not be set aside on appeal unless so contrary to the great weight of the evidence as to be palpably wrong." ' Livermore v. Livermore, 822 So.2d 437, 441 (Ala. Civ. App. 2001) (quoting Chavis v. Chavis, 394 So.2d 54, 55 (Ala. Civ. App. 1981) ). 'However, there is no presumption of correctness in the trial court's application of law to the facts.' Robinson v. Robinson, 795 So.2d 729, 733 (Ala. Civ. App. 2001) (citing Gaston v. Ames, 514 So.2d 877 (Ala. 1987) )."
Hamilton v. Hamilton, 12 So.3d 1236, 1237-38 (Ala. Civ. App. 2009) (emphasis added); see also Alsaikhan v. Alakel, 173 So.3d 925, 927-28 (Ala. Civ. App. 2015).
We agree with the general proposition of law set forth in the dissenting opinion that parties cannot agree to confer subject-matter jurisdiction in a divorce action. 272 So.3d at 1130 (Moore, J., dissenting). We disagree, however, that that is what occurred in this case. The dissenting opinion bolsters its contention that the evidence did not support the determination that the wife intended to stay in Alabama, relying on Weith v. Weith, 263 So.3d 715, 720 (Ala. Civ. App. 2018), stating:
"In Weith, this court concluded that, although the wife in that case had lived in Alabama for the requisite six-month period, she had made the decision to remain in Alabama less than a month before she filed her complaint for a divorce. 263 So.3d at 720. Therefore, this court concluded that the trial court lacked subject-matter jurisdiction to divorce the parties in that case."
272 So.3d at 1131.
The facts in Weith are distinguishable from those in this case, however. In that case, the parties' marital residence was their primary residence in Missouri. In September 2014, they purchased a "secondary home" in Baldwin County. 263 So.3d at 717. The wife in that case testified that they intended to remain in Missouri during the summer and stay in Alabama during the winter. She also acknowledged that she had obtained an Alabama driver's license "to procure less costly insurance and to pay lower taxes" on the Baldwin County house. 263 So.3d at 717. While the parties were preparing the Baldwin County house, the wife would live alternate months in Alabama and Missouri. In early April 2015, while the wife was in Alabama, the husband demanded that she return to Missouri despite their plans to come to Alabama later in the month to celebrate their anniversary. However, he then called her back and told her not to come back to Missouri because he was going to see an attorney about obtaining a divorce. The wife said that she returned to Missouri and discovered that the locks on the marital residence had been changed. At that point, the wife said, she decided to file for a divorce before the husband could and "became residency [sic] at that time." 263 So.3d at 717. She filed a complaint for a divorce on April 21, 2015, in the Baldwin Circuit Court, and she testified that she had been a Baldwin County resident for six months before filing the complaint. Id.
This court held that the undisputed evidence indicated that the wife in Weith had intended the Baldwin County house to be a vacation home only and that, up until she decided to file for a divorce in Alabama in April 2015, she had been living in Alabama and Missouri in alternate months. This court determined that the evidence did not support a finding that she had resided in Alabama for the six months preceding the filing of the complaint, even though the *1123 wife said that she had been a resident for those six months. 263 So.3d at 720.
In the instant case the evidence as to the wife's residency and her intent to remain in Alabama was in dispute. The record indicates that the wife moved several of her belongings to Alabama on June 29, 2016, when she left the marital residence and traveled to her parents' home in Shelby County. In August 2016, when the husband asked the wife not to return to the marital residence in Massachusetts, the wife made the decision to remain in Alabama, although she did travel to other southeastern states to visit with family and friends. She received her mail at the Pisgah address. When she received a traffic citation in Etowah County, she told the arresting officer she lived in Pisgah. At one point before December 2016, the wife apparently obtained insurance through Blue Cross and Blue Shield of Alabama, as evidenced by the statement mailed to her Pisgah address. At the time the husband filed the divorce complaint on May 1, 2017, the wife had resided in Alabama for ten months, and, in August 2016, she had expressed to the husband her intention to remain in Alabama for an unspecified amount of time. Based on the evidence, the trial court reasonably could have determined that the wife intended to remain in Alabama " ' " 'for an indefinite length of time.' " ' " Hamilton, 12 So.3d at 1238. This is especially true in light of the wife's declaration to the trial court on October 3, 2017, five months after the complaint was filed, that she had lived in Jackson County before her "recent move back to Massachusetts."
Although the wife did not tell the trial court that she had intended to stay in Alabama permanently, we note that the wife had resided in Alabama for more than a year before she returned to Massachusetts. The trial court reasonably could have determined that the wife did not make the decision to return to Massachusetts until after she was served with the divorce complaint and believed that Massachusetts law would be more favorable to her than Alabama law.
Our standard of review dictates that,
" '[w]hen evidence is presented ore tenus, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented. Blackman v. Gray Rider Truck Lines, Inc., 716 So.2d 698, 700 (Ala. Civ. App. 1998). The role of the appellate court is not to reweigh the evidence but to affirm the judgment of the trial court if its findings are reasonably supported by the evidence and the correct legal conclusions have been drawn therefrom. Ex parte Trinity Indus., 680 So.2d [262] at 268-69 [ (Ala. 1996) ] ; Fryfogle v. Springhill Mem'l Hosp., Inc., 742 So.2d 1255 (Ala. Civ. App. 1998), aff'd, 742 So.2d 1258 (Ala. 1999). The "appellate court must view the facts in the light most favorable to the findings of the trial court." Ex parte Professional Bus. Owners Ass'n Workers' Comp. Fund, 867 So.2d 1099, 1102 (Ala. 2003).'
" Ex parte Hayes, 70 So.3d 1211, 1215 (Ala. 2011)."
Ex parte Caldwell, 104 So.3d 901, 904 (Ala. 2012).
We find the words of our supreme court in Hilley v. Hilley, 275 Ala. 617, 620, 157 So.2d 215, 219 (1963), especially apt in this situation:
"The issue of domicile or residence was bitterly contested when the cause was tried on July 24-25, 1961. The evidence on this issue was voluminous and extensive, presenting in our judgment a *1124 question of intent on the part of complainant, which is usually a controlling consideration. Caheen v. Caheen, 233 Ala. 494, 172 So. 618(4) [ (1937) ]. By granting the divorce the trial court determined from the conflicting evidence that complainant was domiciled in Alabama at the time suit was filed.
"While we are not any too sanguine from reading the text of the evidence, word for word, that the trial court correctly decided this issue of domicile, we conclude that we should observe our long established rule that where the evidence is taken ore tenus before the court, as here, his findings will not be disturbed on appeal unless clearly and palpably wrong. Mitchell v. Kinney, 242 Ala. 196, 5 So.2d 788(1) [ (1942) ]. We cannot say that such finding was palpably wrong."
Although we may have reached a different conclusion, applying our standard of review to the record before us, we cannot say that the trial court's determination that the wife was a resident of Jackson County at the time the divorce complaint was filed was "palpably wrong, without supporting evidence, or manifestly unjust." Seymour v. Seymour, 597 So.2d 1368, 1369 (Ala. Civ. App. 1992). Accordingly, we refuse to hold the trial court in error as to this issue.
The wife also argues that the trial court erred when, during a hearing on her postjudgment motion to vacate the divorce judgment, it prohibited her from presenting evidence as to her mental state at the time she entered into the settlement agreement with the husband. In her postjudgment motion, the wife asserted for the first time that she had been "diagnosed with a mental illness in January 2017 and the nature of this illness materially affected her judgment and decision making both before and during the various divorce filings." She further claimed that her mental state "played a significant role in her failure to appear in court for the hearing on August 8, 2017," when the issue of jurisdiction was first argued. We note that the wife's mental condition was not mentioned as a reason for the wife's failure to appear when her attorney was asked at the outset of the hearing about why the wife was not present.
The trial court held a hearing on the wife's postjudgment motion. At that hearing, the wife's attorney told the trial court that the wife had subpoenaed and received her certified mental-health records and wanted to introduce them into evidence. The trial court stated that it was not taking any new evidence. When the wife's attorney at the postjudgment hearing, who had not been present at the previous hearings, asserted that, in reaching the settlement, the husband had "taken advantage of" the wife, the trial judge said:
"Well, I'm going to have to except your argument there, because I was presiding over the case that day. And [the wife] had adequate representation. The parties were allowed to negotiate a settlement. The Court required the parties to come before the Court and announce the settlement once it was reached after extended negotiations. And at no time did I observe any behavior from [the wife] as you're trying to describe to this Court today."
The trial court also noted that the wife had been represented by an attorney at each of the previous hearings and that at no time had she presented evidence of mental-health issues. The trial court said that, at those previous hearings, the wife had the opportunity to present the evidence that was being offered at the hearing on the postjudgment motion, but had elected not to do so.
In her brief on appeal, the wife relies on *1125 Claybrook v. Claybrook, 56 So.3d 652 (Ala. Civ. App. 2010), and Dunn v. Dunn, 124 So.3d 148 (Ala. Civ. App. 2013), to support her contention that she was entitled to an evidentiary hearing on the issue of her mental health. In Claybrook, this court reversed the judgment of the trial court, which incorporated the settlement agreement reached in that case, on the ground that the trial court had not afforded the wife in that case an opportunity to present evidence in support of her defenses to the enforceability of the settlement agreement. 56 So.3d at 658.
Before the divorce judgment was entered in Claybrook, the wife had filed a motion repudiating the agreement, alleging coercion, threats of domestic violence, and pointing out that she had not been represented by an attorney during negotiations and the execution of the agreement. In entering the judgment, the trial court did not mention the wife's repudiation of the agreement. The wife then filed a motion to alter, amend, or vacate the judgment, pointing out to the trial court that the judgment had been entered without the court's considering her motion to repudiate and that, instead, the court had relied entirely on statements she had made before that motion was made. Id.
In reversing the trial court's judgment, we explained:
" 'Agreements between parties to divorce actions are generally binding, and such agreements will not be set aside, "except for fraud, collusion, accident, surprise or some other ground of this nature." ' Grantham v. Grantham, 656 So.2d 900, 901 (Ala. Civ. App. 1995) (quoting Brocato v. Brocato, 332 So.2d 722, 724 (Ala. 1976) ). See also Wilcoxen v. Wilcoxen, 907 So.2d 447, 449 (Ala. Civ. App. 2005) ('A trial court has the discretionary authority to permit a party to repudiate an agreement in contemplation of divorce if that party is able to show "good cause." ... "Good cause includes 'fraud, collusion, accident, surprise or some other ground of this nature.' " ' (quoting Culver v. Culver, 651 So.2d 21, 23 (Ala. Civ. App. 1994), quoting in turn Borders v. Borders, 597 So.2d 1373, 1375 (Ala. Civ. App. 1992) ) )."
56 So.3d at 654.
We concluded that the trial court had abused its discretion in failing to grant the wife's postjudgment motion so that the defenses she had asserted as to the enforceability of the settlement agreement could be considered at an evidentiary hearing. Id. at 658.
In Dunn, this court again considered the issue of whether the trial court in that case had abused its discretion by denying the wife's postjudgment motion to set aside a divorce judgment incorporating an agreement of the parties without taking testimony at the postjudgment hearing. As was the case in Claybrook, the wife in Dunn was not represented by an attorney when the agreement was negotiated. 124 So.3d at 148-49. After the judgment was entered, the wife filed a postjudgment motion alleging that, at the time the settlement agreement was reached, "she suffered from various medical problems, was unable to afford an attorney, and was 'intimidated and coerced by [the husband and the husband]'s attorney.' " Id. at 149. The wife also alleged that she was unaware of her ability to request alimony or an interest in the marital residence. Id.
Once again, this court explained:
"Generally, allegations of fraud, duress, or coercion, if proven, may be grounds to set aside a divorce judgment. See Barganier v. Barganier, 669 So.2d 933, 938 (Ala. Civ. App. 1995) (citing Kunkel v. Kunkel, 547 So.2d 555, 556 (Ala. Civ. App. 1989) ) ('A separation agreement incorporated into a divorce judgment must be fair, reasonable, and *1126 just, and free from fraud, duress, or other coercion.'). However,
" ' "[a]n agreement reached in settlement of litigation is as binding on the parties as any other contract.... Moreover, there is a strong policy of law favoring compromises and settlements of litigation, especially in suits involving families, since the honor and peace of the family is often at stake."
" ' Porter v. Porter, 441 So.2d 921, 923 (Ala. Civ. App. 1983). However, in the context of a divorce judgment, our courts have held that the trial court is not bound by the parties' agreement but may accept the agreement or reject the agreement, in whole or in part. See, e.g., Porter, 441 So.2d at 924 ; see also Mullins v. Mullins, 770 So.2d 624 (Ala. Civ. App. 2000) ; Kohn v. Kohn, 52 Ala. App. 636, 296 So.2d 725 (Civ. App.1974).'
" Allen v. Allen, 903 So.2d 835, 840 (Ala. Civ. App. 2004)."
Dunn, 124 So.3d at 149.
In Dunn, the wife argued on appeal that the circuit court had erred by refusing to hear her testimony at the postjudgment hearing regarding her allegations of fraud, duress, or coercion occurring on the day the settlement was reached and the judgment was entered. We agreed and reversed the order denying the postjudgment motion, stating that the circuit court had to hold an evidentiary hearing to "independently determine whether the evidence ... establishes" the wife's defenses, which would require the judgment to be set aside. Id. at 151.
A court has discretion to admit new evidence in a postjudgment hearing. State v. $223,405.86, 203 So.3d 816, 826 (Ala. 2016) ; Ex parte Johnson, 673 So.2d 410, 412 (Ala. 1994). In her appellate brief, the wife in this case does not contend that the agreement between the parties was reached as a result of fraud, coercion, or duress. Her focus is on her contention that the judgment incorporating the settlement agreement the parties had reached was inequitable. She argues that the evidence she wished to present would show that she was " 'mentally compromised' during the pendency of this case which affected her ability to participate in the proceedings" that resulted in the judgment, including the first hearing on jurisdiction, when the trial court denied her motion to dismiss based on lack of jurisdiction.
The gist of the wife's argument on appeal is that the judgment was inequitable because, she claims, under Massachusetts law she would have been entitled to a better outcome than under Alabama law. Therefore, she says, she could have negotiated a substantially better settlement if the action had been litigated in Massachusetts. She also appears to assert that, had she been present at the August 8, 2017, hearing on the issue of jurisdiction, she would have prevailed and the Alabama court would have had to have dismissed the action for lack of jurisdiction. However, the wife claimed for the first time in her postjudgment motion that her mental condition prevented her from appearing at that hearing.
Assuming for purposes of this opinion that the wife could have had a better outcome under Massachusetts law than under Alabama law, a difference in state divorce laws is not a basis for finding that a settlement or judgment based on the less favorable law is inequitable. It also is not a valid basis under Alabama law for determining that a settlement was the result of coercion, duress, or fraud. The wife was represented by an attorney at each of the hearings before the trial court and throughout the negotiation of the settlement agreement. Although the wife said that she had been diagnosed with a mental illness before *1127 the complaint in this action was filed, neither her attorney nor she ever brought that to the attention of the trial court until she filed her postjudgment motion. Moreover, as the trial court pointed out, it had the opportunity to observe the wife on the day of the settlement negotiations and during the hearing when the agreement was read into the record. The trial court did not see signs of mental illness on the wife's part at that time, and the wife's demeanor on that day cannot be recreated in a postjudgment hearing. Accordingly, we conclude that the trial court did not abuse its discretion in prohibiting the wife from presenting evidence at the postjudgment hearing regarding her mental illness.
The wife has failed to demonstrate that the trial court erred or abused its discretion in entering the divorce judgment. Therefore, the judgment is affirmed. The wife's request for an attorney fee on appeal is denied.
AFFIRMED.
Pittman, Thomas, and Donaldson, JJ., concur.
Moore, J., dissents, with writing.

The husband originally filed a complaint for a divorce in Massachusetts on June 27, 2016, but that complaint was dismissed when the wife was not served within 90 days of its filing.

"A motion to ... vacate the judgment shall be filed not later than thirty (30) days after entry of the judgment." Rule 59(e), Ala. R. Civ. P. The 30th day following the entry of the trial court's judgment on November 9, 2017, was Saturday, December 9, 2017. Thus the wife's motion filed on Monday, December 11, 2017, was timely. Rule 6(e), Ala. R. Civ. P.